# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

OLIVIA M. WISE

        Debtor.

_____/

NORMAN H. WISE

          Plaintiff,

v.

OLIVIA M. WISE

          Defendant.

_____/

Case No. 17-45621-TJT
Chapter 7
Honorable Thomas J. Tucker

Adv. Proc. No.

## ADVERSARY COMPLAINT

Norman H. Wise, by and through his undersigned counsel, and for his Adversary Complaint seeking a determination of nondischargeability of debt pursuant to 11 U.S.C. §523(a) and a denial of the discharge pursuant to 11 U.S.C. § 727(a), states as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§157(I) and (J).

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3.     Norman H. Wise is a creditor of Defendant Olivia M. Wise ("Debtor") with a judgment in the amount of $371,819.38, exclusive of post-judgment interest and attorney fees. The entire judgment remains unsatisfied.

4.     Debtor presently resides in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

**Debtor's Pre-petition Conduct**

5.     Debtor is Plaintiff's daughter. Debtor resided rent-free in a rental house purchased by Plaintiff in Royal Oak, Michigan. On March 9, 2016, pursuant a written agreement between Debtor and Plaintiff, Plaintiff deeded real property in Royal Oak to Debtor for no consideration so that Debtor could claim a substantial tax deduction on the sale of the house.

6.     The agreement required Debtor to remit the sale proceeds to Plaintiff.

7.     In exchange, Plaintiff agreed to provide Debtor certain financial support, including assistance in the purchase of a new residence.

8.     On or about May 10, 2016, the real property was sold, and on May 11, 2016, Debtor received $371,789.38 in sale proceeds (the "Proceeds") deposited in her account with Vibe Credit Union.

9.     Debtor failed to remit the Proceeds to Plaintiff pursuant to their agreement and instead misappropriated the Proceeds for her own use.

3.     Norman H. Wise is a creditor of Defendant Olivia M. Wise ( "Debtor") with a judgment in the amount of $371,819.38, exclusive of post-judgment interest and attorney fees. The entire judgment remains unsatisfied.

4.     Debtor presently resides in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

**Debtor's Pre-petition Conduct**

5.     Debtor is Plaintiff's daughter.  Debtor resided rent-free in a rental house purchased by Plaintiff in Royal Oak, Michigan.  On March 9, 2016, pursuant a written agreement between Debtor and Plaintiff, Plaintiff deeded real property in Royal Oak to Debtor for no consideration so that Debtor could claim a substantial tax deduction on the sale of the house.

6.     The agreement required Debtor to remit the sale proceeds to Plaintiff.

7.     In exchange, Plaintiff agreed to provide Debtor certain financial support, including assistance in the purchase of a new residence.

8.     On or about May 10, 2016, the real property was sold, and on May 11, 2016, Debtor received $371,789.38 in sale proceeds (the "Proceeds") deposited in her account with Vibe Credit Union.

9.     Debtor failed to remit the Proceeds to Plaintiff pursuant to their agreement and instead misappropriated the Proceeds for her own use.

10. On July 27, 2016, Plaintiff filed a lawsuit against Debtor in Oakland County Circuit Court, Case No. 2016-154252-CK, asserting, in part, claims for conversion and fraud. **Exhibit A.**

11. Subsequently, Debtor engaged in a comprehensive set of transfers to conceal and/or dissipate the Proceeds.

12. On July 29, 2016, Debtor transferred $33,000 of the Proceeds to her mother and $15,000 of the Proceeds to Vibe Credit Union in connection with the purchase of a minivan.

13. On August 2-3, 2016, Debtor withdrew $10,000 of the Proceeds in cash from her Vibe Credit Union account. Debtor has been unable to account for the dissipation of this money.

14. On August 3, 2016, Debtor withdrew $7,500 of the Proceeds in cash and transferred the cash to her mother.

15. On August 3, 2016, Debtor transferred $310,000 of the Proceeds to a money-market account also held at Vibe Credit Union.

16. On August 10, 2016, Debtor transferred via wire transfer a total of $250,000 of the Proceeds to tax attorney Chelsea Rebeck and/or her firm, Chelsea M. Rebeck, JD, P.C. (collectively "Rebeck").

17. The $250,000 transfer was not a payment for an antecedent debt.

18. On August 26, 2016, Debtor transferred another $25,000 of the Proceeds to her mother.

19. In December 2016, Debtor's mother returned $2,500 of the Proceeds. Debtor has been unable to account for the dissipation of this money.

20. Between December 22, 2016 and January 13, 2017, Debtor received approximately $12,504 from Rebeck. Debtor has failed to account for the dissipation of these funds.

21. On February 1, 2017, the Oakland County Circuit Court imposed a constructive trust over the Proceeds and required immediate transfer of the Proceeds to the court pending disposition of the action. **Exhibit B.**

22. Notwithstanding actual knowledge of the February 1 court order, neither Debtor nor Rebeck attempted to transfer possession of the Proceeds pending disposition of the action.

23. On February 15, 2017, after repeated attempts to avoid disclosure of the disposition of the Proceeds, failing to respond to discovery, and failing to attend court hearings, the Oakland County Circuit Court entered a default judgment against Debtor in the amount of $371,819.38 (the "Judgment") on all counts of the Movant's complaint. **Exhibit C.**

24. Between March 1, 2017 and April 11, 2017, Debtor received approximately $12,500 from Rebeck. Debtor has failed to account for the dissipation of these funds.

25. On the date scheduled for a creditor's examination that would disclose the whereabouts of the Proceeds, Debtor filed her first Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code, Case No. 17-43735, on March 16, 2017 (the "First Petition Date").

26. On March 27, 2017, the first Voluntary Petition was dismissed for failure to file a certificate of credit counseling.

27. The deficiencies associated with the first case were so egregious that the Debtor's attorney was forced to stipulate to the disgorgement of all fees associated with the case. *See* Case No. 17-43735, Doc. No. 23.

28. On April 14, 2017, Debtor was served with a new subpoena for a creditor's examination.

29. That same day, Debtor filed her current bankruptcy case, Case No. 17-45621.

**Debtor's Current Bankruptcy Case**

30. Debtor disclosed a total of $16,091 in assets in her initial bankruptcy schedules. Of these assets, only $1,391 consist of cash and financial accounts. Case No. 17-45621, Doc No. 1.

31.     Debtor's amendments to her schedules demonstrate that she systemically undervalued and failed to disclose property in her initial schedules. For example:

a. Debtor's $650 valuation for household goods and furnishings later increased to $3,000.
b. Debtor's $500 valuation for electronics later increased to $1,000.
c. Debtor's $50 valuation for sporting and hobby equipment later increased to $250.
d. Debtor failed to disclose any jewelry at all but later disclosed approximately $2,060 in jewelry.
e. Debtor disclosed $300 in cash at the time of filing but later disclosed that she had $2,000 in "cash on person."
f. Debtor disclosed only $700 in a Vibe Credit Union account at filing but later disclosed the actual amount was $1,225.15.
g. Debtor failed to disclose any cash cards at the time of filing but later disclosed Costco and Visa cash cards in the total amount of $750.00.
h. Debtor failed to disclose $15,005 in an account at Vibe Credit Union and which was held as security for the payoff her recent vehicle purchase.

32.     The Debtor also failed to disclose the existence and location of the Proceeds in her initial Statement of Financial Affairs ("SOFA"). She also failed to identify transfers other than a $700 payment related to the first bankruptcy filing.

33.     Coinciding with her representations on Schedule I, Debtor identified in her SOFA a total of $9,000 of "family support" received in 2017 and $15,000.00 in "family support" received in 2016. These amounts were removed without explanation in Debtor's amended SOFA.

34.     On April 20, 2017, Plaintiff filed a Motion for an Order Compelling the 2004 examination of Olivia Wise and the Production of Certain Documents and to Require Immediate Turnover of Misappropriated Funds

35.     On May 3, 2017, following the hearing on Plaintiff's motion, the Court entered an Order requiring the Debtor and her attorneys to turn over to the Chapter 7 Trustee all funds traceable to the Proceeds and to file affidavits providing a "full account of all funds that are part of proceeds of, or traceable to, any of the [Proceeds], that were ever in his/her/its possession, custody, or control."

36.     On May 3, 2017, Rebeck turned over $33,768.71 of Debtor's money that had been held in Rebeck's IOLTA account.

37.     Debtor has failed to turn over any funds to the Chapter 7 Trustee.

38.     Debtor has also failed to comply with the Court's May 3order by failing to provide a full accounting as described by that order.

39.     On May 24, 2017, after having three weeks to obtain documents necessary to comply with the Court's requests and without requesting any additional extensions, Debtor filed an unsworn declaration only partially accounting for disposition of the funds not turned over and blaming Rebeck for not providing all of the necessary information at that time.

40.     Debtor has since refused to supplement her unsworn declaration to comply with the Court's order.

41. When given the alternative of simply filing an affidavit verifying Rebeck's accounting of the disposition of all funds not turned over, Debtor has refused to do so.

42. On June 22, 2017, more than two months after Plaintiff's motion was filed and after the Debtor's adjourned Section 341 Meeting of Creditors, Debtor filed amended bankruptcy schedules and an amended SOFA. Case No. 17-45621, Doc No. 64.

43. Notably, the amended schedules do not list the $33,768.71, or any amount, remaining from the Proceeds.

44. The amended schedules, did however, add claims against Plaintiff for "breach of contract, emotional distress and other damages."

45. Debtor knew or should have known that the claims against Plaintiff had no legal merit at the time that the amended schedules were filed.[1]

46. Debtor has asserted the claims for an improper purpose, to harass Plaintiff and to divert estate resources by forcing the Chapter 7 Trustee to investigate a non-existent claim.

## COUNT I – Section 523(a)(2)

---

[1] While it is troubling that such claims would be advanced and listed despite the schedules having been signed under penalty of perjury, Debtor's conduct is even more striking given that her attorneys must have advised her that intentionally listing a false claim in a bankruptcy case is a felony. See 18 U.S.C. § 157(3).

47.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 46.

48.     Section 523(a)(2)(A) of the Bankruptcy Code excludes from the bankruptcy discharge an individual debtor from any debt where the debtor has obtained money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, false representations, or actual fraud.

49.     Debtor engaged in false pretenses, false representations and/or engaged in "actual fraud" when she entered into the agreement with Plaintiff for the sale of the real property with no intent to remit the Proceeds to the Plaintiff.

50.     Debtor engaged in actual fraud when she transferred and misappropriated the Proceeds instead of remitting them to the Plaintiff.

51.     Debtor carried out the actions in paragraphs 49 and 50 with actual fraudulent intent to deceive Plaintiff into believing that she would remit the Proceeds.

52.     Debtor obtained and used the Proceeds as a result of this conduct.

53.     Plaintiff justifiably relied on Debtor's representation that she would comply with their agreement.

54.     Plaintiff's reliance upon the Debtor's representations was the proximate cause of his loss.

55.     Debtor obtained and used the Proceeds as a result of this conduct.

56.     Debtor obligations under the Judgment are the result false pretenses, false representations and/or "actual fraud".

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment declaring that the obligations owed to Plaintiff are excepted from discharge under 11 U.S.C. § 523 and award any other just and equitable relief to which Plaintiff is entitled.

## COUNT II – Section 523(a)(4)

57.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 54.

58.     Section 523(a)(4) of the Bankruptcy Code excludes from the bankruptcy discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

59.     Debtor was lawfully entrusted with the Plaintiff's property as a result of her agreement with Plaintiff.

60.     The circumstances of Debtor's conduct indicates fraud.

61.     Debtor's obligations under the Judgment are the result of either embezzlement or larceny.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment declaring that the obligations owed to Plaintiff are excepted from

discharge under 11 U.S.C. § 523 and award any other just and equitable relief to which Plaintiff is entitled.

## COUNT III – Section 523(a)(6)

62.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 61.

63.     Section 523(a)(6) of the Bankruptcy Code excludes from the bankruptcy discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

64.     Debtor knowingly caused willful and malicious injury by misappropriating the Proceeds.

65.     Debtor knew that harm to Plaintiff was substantially certain to result from her conduct.

66.     The obligations due and owing under the Judgment are a result of Debtor's conduct.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment declaring that the obligations owed to Plaintiff are excepted from discharge under 11 U.S.C. § 523 and award any other just and equitable relief to which Plaintiff is entitled.

## COUNT IV – Section 727(a)(2)(A)

67. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 66.

68. Section 727(a)(2)(A) of the Bankruptcy Code states that the Court shall not grant a debtor's discharge if "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed...property of the debtor, within one year before the date of the filing of the petition."

69. Debtor's own declaration and amended SOFA demonstrate that within the year before their bankruptcy filing, Debtor engaged in a series of transfers of the Proceeds.

70. These transfers also include the matters set forth in ¶¶12-16 and ¶18 of this Complaint, such as the purchase of a vehicle, miscellaneous transfers to her mother, and $250,000.00 to Rebeck.

71. Each of these transfers was made within one year of the Debtor's bankruptcy filing.

72. Each of these transfers was made with the specific intent to hinder, delay or defraud Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying Debtor's discharge under 11 U.S.C. § 727 and award any other

just and equitable relief to which Plaintiff is entitled.

## COUNT V– Section 727(a)(3)

73.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 72.

74.     Section 727(a)(3) of the Bankruptcy Code states that the Court shall not grant a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case";

75.     During the year prior to filing, Debtor transferred $250,000.00 to Rebeck.

76.     Despite being ordered to account for the dissipation of the Proceeds, Debtor and Rebeck have declined to provide details for the dissipation of approximately $165,000 of the funds. More specifically, while Rebeck provided what are purported to be "invoices" and "retainer agreements", neither Rebeck nor Debtor have provided documentation of (1) Debtor's written instructions required for disbursements from the IOLTA account and (2) evidence that money was *actually* disbursed from the IOLTA account to pay legal fees.

77. During the eight months prior to filing, Debtor received more than $25,000 from Rebeck and withdrew $10,000 in cash from her Vibe Credit Union Account. Debtor has been unable to explain and has not provided documents to explain the dissipation of these funds.

78. During the eight months prior to filing, Debtor also transferred $32,500.00 to her mother in cash and electronic transfers from her Vibe Credit Union Account.

79. Debtor apparently has been using her mother as a "straw man" for transactions including the purchase of a vehicle. Further evidencing her control over the funds held by her mother, Debtor's mother returned $2,500 of the funds.

80. Debtor has failed to provide any documentation as to the dissipation of any of these funds.

81. Based on the failures of Debtor to produce such documents, Plaintiff is unable to determine the extent to which Debtor and her attorneys have complied with the Court's May 3 order.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge under 11 U.S.C. § 727 and award any other just and equitable relief to which Plaintiff is entitled.

### COUNT VI – Section 727(a)(4)

82.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 81.

83.     Section 727(a)(4)(A) of the Bankruptcy Code state that the Court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case… made a false oath or account."

84.     Debtor has filed multiple sets of schedules in this case and has made multiple false oaths as described in ¶¶30-33 and ¶¶42-46.

85.     Debtor filed the initial schedules with the specific intent to defraud the Chapter 7 Trustee, this Court, and Plaintiff.

86.     Each of Debtor's repeated failures to disclose assets or transfers of assets or otherwise truthfully and accurately complete their Schedules and SOFA constitutes a false oath for the purposes of Section 727(a)(4)(A).

87.     Each of Debtor's repeated false statements as to the status and possession of the Proceeds false oath for the purposes of Section 727(a)(4)(A).

88.     The failure to list the Proceeds, transfers of the Proceeds, and their disposition were knowing and deliberate.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying Debtor's discharge under 11 U.S.C. § 727 and award any other just and equitable relief to which Plaintiff is entitled.

### COUNT VII – Section 727(a)(5)

89.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 88.

90.     Section 727(a)(5) of the Bankruptcy Code states that the Court shall not grant a debtor's discharge if "the debtor has failed to explain satisfactorily, before determination of denial or discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

91.     During the year prior to filing, Debtor received and misappropriated $371,789.38.

92.     During the year prior to filing, Debtor transferred $250,000 to Rebeck.

93.     Despite being ordered to account for the dissipation of the Proceeds, Debtor and Rebeck have declined to provide details for the dissipation of approximately $165,000 of the funds. More specifically, while Rebeck provided what are purported to be "invoices" and "retainer agreements", neither Rebeck nor Debtor have provided documentation of (1) Debtor's written instructions required for disbursements from the IOLTA account and (2) evidence that money was *actually* disbursed from the IOLTA account to pay legal fees.

94.     During the eight months prior to filing, Debtor received more than $25,000 from Rebeck and withdrew $10,000 in cash. Debtor has been unable to explain and has not provided documents to explain the dissipation of these funds.

95.     During the eight months prior to filing, Debtor transferred $32,500.00 to her mother in cash and electronic transfers.

96.     Debtor's pattern of transfers show that she retained control of money placed in her mother's possession, including but not limited to the return of some of the funds.

97.     Nonetheless, Debtor has not been able to explain the dissipation of the funds provided to her mother.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge under 11 U.S.C. § 727 and award any other just and equitable relief to which Plaintiff is entitled.

## COUNT VIII – Section 727(a)(6)

98.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 97.

99.     Section 727(a)(6) provides for denial of the discharge when:

**(6)** the debtor has refused, in the case—

> **(A)** to obey any lawful order of the court, other than an order to respond to a material question or to testify;

> **(B)** on the ground of privilege against self-incrimination, to

respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

**(C)** on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

100.     Debtor has willfully and intentionally failed to comply with this Court's May 3 order requiring an account of all funds traceable to the Proceeds.

101.     Debtor knowingly and intentionally failed to account for transfers of money placed into the possession of Rebeck and the disposition of which was solely at the discretion of the Debtor.

102.     According to Rebeck's affidavit and its supporting documentation, all transfers of the Proceeds from Rebeck's IOLTA account were done at the direction of Debtor.

103.     Therefore, notwithstanding her claims otherwise Debtor had knowledge of these transfers so as to describe them in her declaration.

104.     As described in her declaration, Debtor knowingly decided not to comment on those transfers.

105.     Following the filing of Rebeck's affidavit, Debtor was contacted, through her counsel, and requested to supplement the affidavit based on the information now available to her. Debtor declined to do so.

106. Plaintiff then requested that Debtor at least review Rebeck's affidavit and sign an affidavit indicating that she agreed or disagreed with the averments contained therein. Debtor declined to do so

107. The violations are not merely technical in nature but affect the disposition of nearly half of the Proceeds. Debtor and Rebeck have declined to provide details for the dissipation of approximately $165,000 of the funds. More specifically, while Rebeck provided what are purported to be "invoices" and "retainer agreements", neither Rebeck nor Debtor have provided documentation of (1) Debtor's written instructions required for disbursements from the IOLTA account and (2) evidence that money was *actually* disbursed from the IOLTA account to pay legal fees.

108. Further, Debtor has also failed to proffer a full explanation as to why $32,500 was transferred to her mother, for what purposes, how it was used, and the remaining balance of such funds.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge under 11 U.S.C. § 727 and award any other just and equitable relief to which Plaintiff is entitled.

Dated: July 24, 2017

KERR, RUSSELL AND WEBER, PLC


By: /s/ William C. Blasses
     James E. DeLine (P45205)
     William C. Blasses (P73945)
Attorneys for Plaintiff
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200
jdeline@kerr-russell.com;
wblasses@kerr-russell.com

# EXHIBIT A

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/Pages/efiling.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

NORMAN H. WISE,

     Plaintiff,

v.

OLIVIA M. WISE,

     Defendant.

2016-154252-CK
JUDGE ANDERSON

Case No. 2016-_____-CK

_____/

James E. DeLine (P45205)
KERR, RUSSELL AND WEBER, PLC
Attorneys for Plaintiff
500 Woodward Ave., Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

_____/

There is no other pending or resolved civil action arising out of the
transaction or occurrence alleged in the complaint.

**<u>COMPLAINT AND JURY DEMAND</u>**

Plaintiff, Norman H. Wise, for his Complaint against Olivia M. Wise, states as follows:

1.     Plaintiff brings this action against his daughter to recover $371,819.38 in real estate sale proceeds that she now refuses to surrender to her father despite their prior agreement.

2.     Plaintiff Norman H. Wise is an individual who resides in the State of Florida.

3.     Defendant Olivia M. Wise is an individual who resides at 30515 Fairfax, Southfield, Michigan. Olivia M. Wise is the daughter of Plaintiff.

4.     The amount in controversy exceeds $25,000, exclusive of interest, costs and attorney fees.

1

5.      Prior to 2002, Defendant married her domestic partner, Debrin Cox, who subsequently changed her name to Debrin Wise.

6.      After Defendant and Debrin Cox were married, Plaintiff financed two *in vitro* fertilization procedures for Defendant, which result in the birth of Plaintiff's two grandchildren, Jaren and Zora Wise.

7.      On or about September 9, 2011, Plaintiff purchased a house in Royal Oak, Michigan located at 137 South Wilson Avenue for the purchase price of $250,000 (the "Royal Oak House") to provide a suitable residence for Defendant, Cox, and their two children.

8.      Defendant did not contribute any money for the purchase of the Royal Oak House.

9.      In or around October 2011, Defendant, Cox, and their two children moved into the Royal Oak House and lived there rent-free thanks to Plaintiff's generosity.

10.     At all relevant times, Plaintiff paid all the property taxes and homeowners insurance premiums for the Royal Oak House. Plaintiff also paid for approximately $50,000 in improvements to the property.

11.     In addition, Plaintiff also paid a portion of Defendant's living expenses, including health insurance premiums for Defendant and her children.

12.     In or around 2014, Defendant and Cox separated, and Cox vacated the Royal Oak House.

13.     Plaintiff then decided to place the Royal Oak House on the market.

14.     Consequently, on or about March 15, 2015, Plaintiff, through a limited liability company owned by him, purchased a house located at 30515 Fairfax, Southfield, Michigan (the "Southfield House") to provide another suitable residence for Defendant and her children.

15. Defendant did not contribute any money for the purchase of the Southfield House.

16. Around the same time, Plaintiff also generously provided Defendant with a new Chevrolet Traverse for Defendant's business and personal use.

17. In or around May 2015, Defendant and her two children vacated the Royal Oak House and moved into the Southfield House.

18. Defendant has lived in the Southfield House rent-free thanks again to Plaintiff's generosity.

19. At all relevant times, Plaintiff paid all the property taxes, homeowners insurance and utilities for the Southfield House, where Defendant still resides.

20. Thus, over the past fifteen years, Plaintiff has generously given Defendant over $300,000 in financial support.

21. In addition to his generous financial support, Plaintiff also provided Defendant, a licensed CPA, with employment at Plaintiff's business, Quality Team 1.

22. Defendant, however, refused to perform her job duties at Quality Team 1, so Plaintiff was forced to fire his own daughter.

23. Plaintiff then assisted Defendant in obtaining a new accounting job at a company in Troy, Michigan. Upon information and belief, Plaintiff was fired from that job as well.

24. On or about February 19, 2016, Plaintiff and Defendant entered into an agreement (the "Agreement") whereby Plaintiff would deed the Royal Oak House to Defendant for tax purposes so Defendant could claim a one-time $250,000 tax deduction upon the sale of the Royal Oak House. In exchange, Defendant agreed to surrender to Plaintiff $250,000 from the sale proceeds upon the sale of the Royal Oak House. Defendant also agreed to use the remaining sale proceeds to purchase the Southfield House from Plaintiff.

25.     The terms of the Agreement were memorialized in an email sent by Defendant to Plaintiff and accepted by Plaintiff. A copy of the email chain is attached as Exhibit A.

26.     On March 9, 2016, pursuant to and in reliance on the Agreement and Defendant's promise, Plaintiff conveyed the Royal Oak House to Defendant by quit claim deed for the sum of one dollar.

27.     On or about March 25, 2016, Plaintiff entered into a real estate purchase agreement with Peter and Jamie Boyse for the sale of the Royal Oak House for a purchase price of $400,137. Defendant was not a party to the purchase agreement.

28.     The sale of the Royal Oak House closed on May 10, 2016.

29.     Defendant executed the closing documents as Plaintiff's agent but had absolutely no other involvement in the sale of the Royal Oak House.

30.     On or about May 10, 2016, Defendant received the sum of $371,819.38 as proceeds from the sale of the Royal Oak House (the "Proceeds").

31.     After the closing, Plaintiff contacted Defendant almost daily to request payment of $250,000 from the Proceeds pursuant to the Agreement.

32.     Defendant failed to respond.

33.     Eventually, Defendant informed Plaintiff that she retained a tax advisor, Chelsea M. Rebeck, and could not surrender the Proceeds, contrary to the Agreement, due to unexplained "tax issues."

34.     Plaintiff, through counsel, contacted Defendant's tax advisor numerous times between May 23 and June 24, 2016, to demand surrender of the Proceeds.

35.     Defendant's tax advisor repeatedly promised to provide Plaintiff with "calculations related to the proceeds" but failed to do so.

36. Upon information and belief, Defendant is improperly using the Proceeds for her own personal benefit.

37. Despite Plaintiff's overwhelming generosity to Defendant, providing her with rent-free housing, financial assistance, employment, health insurance, and an automobile, Defendant still to this day wrongfully and in bad faith refuses to surrender any of the Proceeds to Plaintiff, instead forcing him to commence this action against his daughter.

## COUNT 1 - BREACH OF CONTRACT

38. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

39. The Agreement constitutes a valid, binding and enforceable agreement between Plaintiff and Defendant.

40. Plaintiff complied with all of his obligations under the Agreement.

41. Defendant willfully and wrongfully breached the Agreement.

42. Plaintiff has been damaged by Defendant's breach of the Agreement.

## COUNT 2 - UNJUST ENRICHMENT

43. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

44. Defendant has received and continues to receive the benefit of Plaintiff's actions, including deeding the Royal Oak House to Defendant and entrusting her with the Proceeds.

45. Defendant has been unjustly enriched to the detriment of Plaintiff.

46. Plaintiff has suffered damages as a result of Defendant's unjust enrichment.

## COUNT 3 - BREACH OF FIDUCIARY DUTY

47.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

48.    As Plaintiff's agent for the sale of the Royal Oak House, Defendant owed Plaintiff fiduciary duties, including the duty of care, honesty, good faith and fair dealing.

49.    Defendant breached her fiduciary duties to Plaintiff by failing and refusing to surrender the Proceeds to Plaintiff despite Plaintiff's repeated demands.

50.    Plaintiff has suffered damages by Defendant's breach of fiduciary duties.

## COUNT 4 - CONVERSION

51.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

52.    Defendant, acting as Plaintiff's agent for the sale of the Royal Oak House, wrongfully exercised control over and possession of the Proceeds.

53.    Defendant knew or should have known that the Proceeds belonged to Plaintiff.

54.    Defendant had an obligation to surrender the Proceeds entrusted to her care.

55.    Plaintiff demanded the surrender of the Proceeds.

56.    Defendant failed and refused to surrender the Proceeds to Plaintiff.

57.    By knowingly and intentionally exercising control over and possession of the Proceeds, Defendant has wrongfully converted such Proceeds.

58.    As a direct result of Defendant's conversion, Plaintiff has been damaged and will continue to suffer damages.

## COUNT 5 - STATUTORY CONVERSION

59.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

60.     Plaintiff has been damaged as a result of Defendant's stealing, embezzling, and converting Plaintiff's property to Defendant's own use in violation of MCL 600.2919a.

61.     As a direct result of Defendant's statutory conversion, Plaintiff has been damaged and will continue to suffer damage.

62.     Pursuant to MCL 600.2919a, Plaintiff may recover three times the amount of actual damages sustained as a result of the wrongful acts of Defendant, plus costs and reasonable attorney fees, in addition to any other right or remedy Defendant may have at law or otherwise.

## COUNT 6 - ACCOUNTING

63.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

64.     Defendant has failed and refused to inform Plaintiff about her use or the disposition of the Proceeds.

65.     Plaintiff is entitled to a full and complete accounting of the disposition and whereabouts of the Proceeds.

## COUNT 7 - CONSTRUCTIVE TRUST

66.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

67.     Defendant has converted a significant amount of the Plaintiff's money.

68.     Defendant is believed to be in possession or control over a substantial amount of money belonging to Plaintiff.

69.     Imposition of a constructive trust is necessary in this case to do equity and/or to prevent unjust enrichment.

70.     Because the money in Defendant's possession or control acquired tortiously and illegally, a constructive trust should be imposed upon Defendant to preventing her from spending, transferring, encumbering, and/or disposing of any of the Proceeds during the pendency of this case.

## COUNT 8 – PROMISSORY ESTOPPEL

71.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

72.     On or about February 19, 2016, Defendant explicitly promised Plaintiff that she would surrender the Proceeds to Plaintiff if Plaintiff conveyed the Royal Oak House to Defendant.

73.     Defendant's promise was clear, definite, and unequivocal and was specifically made to induce Plaintiff to convey the Royal Oak House to Defendant.

74.     To avoid injustice, this court must specifically enforce Defendant's promise to Plaintiff to surrender the Proceeds.

75.     At the time of making the promise and inducing the action by Plaintiff, Defendant could reasonably foresee that her failure to perform pursuant to the promise would cause the damages Plaintiff has suffered.

76.     As a direct and proximate result of Defendant's failure to perform, Plaintiff has suffered damages.

## COUNT 9 - FRAUDULENT MISREPRESENTATION

77.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

78.     Defendant, in bad faith, promised to Plaintiff that she would surrender the Proceeds to Plaintiff.

79.     Plaintiff did not intend to keep the promise when it was made.

80.     Plaintiff made the promise to perpetuate a fraud on Plaintiff.

81.     There existed a relationship of trust and confidence between Plaintiff and Defendant.

82.     Defendant made the promise with the intent that Plaintiff rely on it.

83.     Plaintiff relied on the promise.

84.     Plaintiff suffered damages as a result of his reliance on Defendant's bad faith, fraudulent promise.

## COUNT 10 – RESCISSION OR REFORMATION

85.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

86.     If a mutual mistake existed in the formation of the Agreement, the Agreement should be rescinded or reformed to prevent Defendant from being unjustly enriched and receiving a windfall at Plaintiff's expense.

87.     Alternatively, the Agreement should be rescinded due to Defendant's material breach, fraudulent conduct, and failure of consideration.

**WHEREFORE**, Plaintiff requests the following relief:

A.   An order of specific performance requiring Defendant to surrender the Proceeds to Plaintiff immediately;

B.   An order preventing Defendant from spending, transferring, encumbering, and/or disposing of any of the Proceeds during the pendency of this case;

C.   A money judgment against Defendant in the amount of $371,819.38;

D.   Pursuant to MCL 600.2919a, an award of three times the actual damages suffered by Plaintiff as a result of Defendant's conversion;

E.   A full, formal accounting of the Proceeds;

F.   Rescission or reformation of the Agreement to prevent a windfall to Defendant and return Plaintiff to the status quo before the Agreement;

G.   An award of costs, attorney fees, and prejudgment interest; and

H.   Any other legal or equitable relief that the Court deems just and proper.

**KERR, RUSSELL AND WEBER, PLC**

By: /s/James E. DeLine
    James E. DeLine (P45205)
Attorneys for Plaintiff
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Dated: July 27, 2016

## JURY DEMAND

Plaintiff, Norman H. Wise, demands a trial by jury in this action.

KERR, RUSSELL AND WEBER, PLC

By: /s/James E. DeLine
    James E. DeLine (P45205)
Attorneys for Plaintiff
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Dated: July 27, 2016

# EXHIBIT A

Received Filing ID Filing Sanilac County Clerk 07/24/17 ... PM ...

**From:** Norman H. Wise
**Sent:** Friday, February 19, 2016 11:12 AM
**To:** 'Olivia Wise' <omwise89@gmail.com>
**Subject:** RE: 137 S. Wilson

Livy,

I agree to all elements of the attached memo.

Best Regards,
Norman H. Wise
Chief Executive Officer
Quality Team 1
Office: 313-867-8000
Cell: 313-790-0021

---

**From:** Olivia Wise [mailto:omwise89@gmail.com]
**Sent:** Friday, February 19, 2016 9:53 AM
**To:** Norman H. Wise <NWise@qteam1.com>
**Subject:** 137 S. Wilson

Hi Dad,

Below is a summary of what we discussed.

1. You will quit claim deed the S Wilson Ave property to me with a $250,000 note payable by me to you upon the sale of the property.

2. After the S Wilson Ave property sells, I will purchase the Fairfax St property from you at a tbd price (est price = S Wilson Ave net proceeds - $250,000 - less hold-back for (AC replacement + one year property taxes + one year insurance)). Intent of the hold-back is to allow me one year to get on my feet.

3. Increase the HAI insurance stipend from $1200/month to $1350/month thru November 1, 2016. The increase will cover the cost of Zora's orthodontist payments.

4. Payment date for the HAI insurance stipend will shift from the 1st of the month to the 20th of the prior month. I.e., March 1st payment will be made by February 20th. The intent is to ensure that I have the resources to pay HAP health insurance premium by the 1st of the month.

Please let me know if the above summary is correct.

Thank you for all your help and support. I deeply appreciate it.

Olivia

---

On Thursday, February 18, 2016, Norman H. Wise <NWise@qteam1.com> wrote:

Olivia, Gary,

Gary, I am following through with your suggestion of putting the Wilson house in Olivia's name. Once it is sold, she will use her one-time $250,000 tax credit exemption to reduce the house basis price, therefore eliminating any capital gains tax. She will remit the net funds of the Wilson sale, to me.

The tax savings will be significant to me; especially with the $2,000,000 Helm fire claim hanging over my head.

I have contacted Jeff Glover & Associates, the listing agent for 137 S. Wilson; he is having a Quit Claim Deed drafted, specifying Olivia Marie Wise as the owner. It should be completed tomorrow, I shall sign electronically, Olivia will have to sign at the Glover Birmingham office.

I contacted attorney, Jim DeLine and he said; since Olivia occupied the home for a few years, it was perfectly legal to claim the exemption.

Gary is there anything else I have to do concerning this matter?

Best Regards,
Norman H. Wise
Chief Executive Officer
Quality Team 1

**EXHIBIT B**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

NORMAN H. WISE,

     Plaintiff,

v.                                 Case No. 2016-154252-CK
                                    Hon. Martha D. Anderson

OLIVIA M. WISE,

     Defendant.

_____/

James E. DeLine (P45205)
KERR, RUSSELL AND WEBER, PLC
Attorneys for Plaintiff
500 Woodward Ave., Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Chelsea M. Rebeck (P76368)
REBECK LAW, PC
Attorneys for Defendant
30445 Northwestern Highway, Ste. 220
Farmington Hills, MI 48334
(248) 636-2222
chelsea@rebecklawpc.com

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

At a session of said Court, held in
The City of Pontiac, Oakland County,
State of Michigan, on _Feb 1, 2017_

Present Hon.: _MARTHA D ANDERSON_
                     CIRCUIT COURT JUDGE

Plaintiff Norman H. Wise having filed a motion for discovery sanctions against

Defendant Olivia M. Wise for violating this court's January 24, 2017, Order Compelling

Discovery, the court having held a hearing on the motion and being otherwise advised, now, therefore,

IT IS ORDERED:

A.    Plaintiff's motion is granted for the reasons stated on the record and in the motion. ~~Defendant's answer and affirmative defenses are stricken;~~ *Defendant shall provide full and complete discovery responses by Feb 15, 2017.* and

B.    The sale proceeds in the amount of $371,819.38 received by Defendant from the sale of 137 South Wilson Avenue, Royal Oak, Michigan are hereby held in a constructive trust; and Defendant shall, within two days after entry of this order, pay all such proceeds into the court pending the final disposition of this action; and

C.    Plaintiff is awarded costs, including reasonable attorney fees, in the amount of $1,000, against Defendant and Defendant's attorney of record, Chelsea M. Rebeck, jointly and severally, which shall be paid within *14* ~~seven~~-days after entry of this order.

_____
CIRCUIT COURT JUDGE

# EXHIBIT C

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

NORMAN H. WISE,

    Plaintiff,

v.

                                   Case No. 2016-154252-CK
                                   Hon. Martha D. Anderson

OLIVIA M. WISE,

30515 Fairfax, Southfield, MI 48076
    Defendant.

_____/

James E. DeLine (P45205)
KERR, RUSSELL AND WEBER, PLC
Attorneys for Plaintiff
500 Woodward Ave., Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com

Chelsea M. Rebeck (P76368)
REBECK LAW, PC
Attorneys for Defendant
30445 Northwestern Highway, Ste. 220
Farmington Hills, MI 48334
(248) 636-2222
chelsea@rebecklawpc.com

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

At a session of said Court, held in
The City of Pontiac, Oakland County,
State of Michigan, on ___2/15/2017___

Present Hon.: ___MARTHA D. ANDERSON___
                  CIRCUIT COURT JUDGE

Plaintiff Norman H. Wise having filed a motion for entry of default judgment against

Defendant Olivia M. Wise, the court having held a hearing on the motion, Defendant having

failed to respond to the motion or appear at the hearing, and being otherwise advised, now, therefore,

IT IS ORDERED:

A. Plaintiff's motion is granted for the reasons stated in the motion and on the record. A judgment is entered in favor of Norman H. Wise against Olivia M. Wise in the amount on Plaintiff's complaint (including Count 9 - fraud) of $371,819.38. The judgment shall accrue interest at the statutory rate until paid in full;

B. Olivia M. Wise and all persons in active concert or participation with her are restrained and enjoined from directly or indirectly selling, liquidating, assigning, transferring, converting, loaning, encumbering, pledging, dissipating, concealing, spending, withdrawing, or otherwise disposing of any money, funds, or proceeds received from the sale of the real property located at 137 South Wilson Avenue, Royal Oak, Michigan; and

C. In addition to the costs previously awarded to Plaintiff, Plaintiff is awarded costs, including reasonable attorney fees, in the amount of $750 against Defendant and Defendant's attorney of record, Chelsea M. Rebeck, jointly and severally, for failing to appear at Defendant's deposition and failing to attend the hearing on this motion. All costs shall be paid within 7 days after entry of this order.

This order resolves the last pending claim and closes the case.

_____
CIRCUIT COURT JUDGE

{37665/1/D1131228.DOCX;1}